Good morning, everyone. Good morning. Good morning. How lovely to see you all. All right, we are going to begin with case number one, which is Appeal 213373 and it is Aneta Hadzi-Tanovic v. Robert Johnson et al and it's Mr. Masciatelli. Good morning. Good morning, Your Honor. You may begin anytime you're comfortable. May it please the court, opposing counsels, and ladies and gentlemen, this case today is brought before you on the issue of abstention. The case at bar was dismissed without prejudice because of abstention. Mr. Masciatelli, forgive me for interrupting you so quickly, but I do think there's something we absolutely need to address and that is the fact that your client filed a pro se motion that essentially states that your brief is deficient in a number of ways. Is there anything you want to tell us about the ways in which your client thinks your briefing is deficient? Yes, Your Honor. Abstention is an issue that is fact specific for every case. My client was disappointed that the case law that is presented in the Seventh Circuit is not supportive of abstention and I had to explain to her consistently that the facts in this case are completely different than the facts in the other cases and that is how we're going to distinguish why abstention in this case was wrong. All right. My client agrees, Judge. That was my next question. Are you on the same page now? Yes, we are on the same page, Judge. This is a very difficult and emotional case. My client wanted to be here today. She couldn't. She's having nausea and vomiting. Every time she thinks of this case, her whole world has changed. So I asked the court to take into consideration the facts that are different in this case than all the cases that were cited in support of abstention. Nothing in this case has ever been discussed about public corruption, which is what we're discussing about the public corruption in Cook County Domestic Relations Division. Well, there are a number of abstention cases that deal with the concept of corruption, Nessus, Pushpin, these other cases. So our case law, this court's case law has got a line that deals with the corruption exception to the Rooker-Feldman Doctrine. Of course, there are other cases, Bauer, et cetera, that don't. Where do you believe this case falls on that corruption exception spectrum? Judge, the corruption in this particular case is significant. It is a denial of due process. It is a denial of a fair fact finder in your court of law. It is an ex parte communication between a judge and a GAL who is driven by getting sexual satisfaction from litigants in exchange for favorable reports. Litigants- Mr. Mascialetti, do judges have absolute immunity from suit? Why do you suppose that this report didn't simply decide the claims against Judge Johnson on this ground? Your Honor, I apologize to you, but I'm having difficulty in understanding what you said. I'd ask kindly if you could repeat. Of course. Don't judges have absolute immunity from suit? Why? I mean, why is it, do you think, that the district judge didn't just decide the claims against Judge Johnson on that ground? Your Honor, because three defendants were dismissed. The judge, the GAL, and the husband in this case, who is also an attorney, a plaintiff, is also an attorney. Could you answer the question, why should the claim against Judge Johnson not just be dismissed based on judicial immunity? Judicial immunity applies to actions in your courtroom, Your Honor. It does not apply to ex parte communications with other individuals in the back rooms and fixing cases without the facts that are before you. What is your, where is your proof of this other than you may have seen them walking together? Well, Your Honor, this is a difficult question because should a plaintiff be afforded the established those facts? Or do we have to plead this in our pleadings? We made significant allegations that are, that would point to the fact that, yes, in fact, there was these ex parte communications. I was the attorney in that case. I had seen the GAL and Judge Johnson walk in together from the back room. I don't know how the GAL ever got to the back room to Judge Johnson's to present evidence. There was rulings. So, Mr. Machitelli, we understand. We've read your briefs and we know you've made a lot of these serious allegations. The question at bottom here is about federalism, right? The question is whether you can bring this collateral attack on divorce proceedings in the Illinois state courts by suing these people for damages. Let me ask you, first of all, does your client allege any harm that was not caused by the state court orders in the divorce case? No. Okay. That obviously points us in the direction of Rooker Feldman. And as my colleagues have noted, we have a couple of cases that have said, at least in dicta, that there is a so-called corruption exception is what it might be called for Rooker Feldman. My question is how do we tell the difference? What's the limiting principle? What's the boundary? How do we recognize or is that a workable line at all under Rooker Feldman? Under Rooker Feldman, it is not a workable line. And this court stated that Rooker Feldman did not apply. You're talking about when? Which case? You're talking about Nessus or Lauser? Lauser is a case where Judge Posner explained the theories. He was speaking for the court and it doesn't matter who wrote it. But my question to you is whether that is a workable line and how we determine it. I'll tell you, what concerns me is that in your brief, you seem to be arguing that if we, the federal courts, will simply review the case and understand that the only way your client could have lost was through corruption, right? Correct. That is not, in my view, a workable jurisdictional test. Your Honor, it has to be. And the reason is that there's exceptional circumstances. What the court must acknowledge is that Judge Johnson refuses to recuse himself from the state court proceeding. Why should he? Look, let's just go back to Lobster for a second. That case states that vague claims of a conspiracy are insufficient to survive a motion to dismiss. I didn't see any citations to the record for any of the claims you make. Only this notion that Judge Johnson thought that guardian ad litem was competent, that they were not, is not true. So, in your brief, you seem to be arguing that if we, the federal courts,   That is not, in my view, a workable jurisdictional test. Why should he? Look, let's just go back to Lobster for a second. That case states that vague claims of a conspiracy are insufficient to survive by Judge Johnson, who cannot be a fair adjudicator or an unbiased adjudicator of facts. We have a petition pending called the 214-01 petition to vacate because of fraud in the state case. We're not allowed to litigate those issues. We brought a motion before the appellate court under Illinois Supreme Court Rule 366. It gives the appellate court some authority to correct wrongs when there really is limited jurisdiction. It sounds like you're making the argument that the dispute should be resolved in the state court and therefore Judge Tharp was not incorrect by relying on Woodard and deferring to the state court. He cannot defer to the state court, Your Honor. We're not getting a fair adjudication and that's number three of the four elements that must be concerned. Whether or not your constitutional claims will be addressed appropriately in the state proceedings. They cannot be addressed appropriately in a state court proceeding where there is corruption. Is there something about that June 13, 2018 order that was not final? It was appealable. It did an allocation with regard to the trial of custody. Is there something about that June order that didn't make it final? The case is preceded. In other words, when that order is entered, there's further litigation to remove that particular limitation. It is not... But why did your client drop the ball on the appeal to the Illinois appellate court? Wasn't that the place to address the harm of the loss of parenting time? We did appeal to the appellate court. The appellate court refused to exercise jurisdiction. I thought the appeal of the June 13, 2018 order timed out. Your client failed to appeal. We brought an appeal with the appellate court, Your Honor. And again, we cited that section 366, Supreme Court Rule 366. Are Judge Brennan and I incorrect if we think your client dropped the ball? Judge, I mean... Your Honor, there's new facts that were learned about this particular case in the next two years after that June of 2018 decision. There was the federal civil rights lawsuit that we filed in issued against the GAL in July of 2020. There were two felony indictments against the GAL in August of 2020. There was a suspension of the GAL's law license in December of 2020. There were three more felony indictments against the GAL in January of 2021. All right. That's the GAL. Let's put the GAL aside for one second. What factual allegations, however, support the idea that there was a conspiracy between Pavlovich, the guardian ad litem, or the judge and the guardian ad litem? The circumstances that followed the hearings, the testimony that was provided by the husband-spouse, the refusal to have discussion, in-chambers discussions with the children who had written letters to the judge to explain that there is wrongful conduct by the GAL. Judge, there's significant amount of evidence that was not allowed. There's an advocacy interview of the three children through DCFS that was refused to be looked at. So we're, again, asking this court to take consideration of the fact that the state proceedings are not an appropriate jurisdiction or place for the plaintiff to bring her cause of action. The only place that does... I would like to ask you one more question, because you're claiming for the first time in this appeal without any citation to a factual record or any other support that I could see that your client was sexually assaulted by the guardian ad litem. I would very much appreciate your telling me where this is in the record and why this is the very first time we're hearing about it. Judge, I can't explain that to you, because my client did not provide me with information about sexual abuse until these other facts came out about the ARDC complaint and the felony indictments. My client is a Jane Doe, and one of the felony indictments was filed in January of 2021. And again, women who are sexually abused ignore those facts. They don't want public to know that they were sexually abused, that a GAL stuck his hand under your skirt into your vagina three different times and told you, if you want to see your kids again, you will give me sexual gratification. Counsel, could you please address the microphone so you'll be recorded? And that's what I'm asking the court to take as a special circumstance in this case, to allow this case to go forward, just as Judge Posner did in the Loebner case. So did any of... Which of those cases actually went forward? We've... I mean, we have... We all understand that dissolution cases are... can be explosive. And it's not at all unusual for people who lose in those cases in the state courts to look for other venues, look for other forums, and they'll sometimes come to federal court, as your client has. And so how do we have... As you know, we run into all sorts of different doctrinal obstacles, abstention, jurisdiction, Rooker-Feldman, immunities, and so on. What's the most success you've found in our cases that somebody has had in bringing a collateral challenge to state court divorce proceedings? The only case that I cited was the Manos case, and that was a district court decision where a person's home was burglarized, guns were taken, and upon completion of the criminal prosecution, the state's attorneys made up lies to the judge to not allow him to have return of his guns. Whether or not the right to bear arms, Second Amendment, huge state interest. So... Wait a minute. So no divorce cases? No divorce cases. Okay. So I'm going to ask you one more time with the indulgence of my colleagues here, but how do we find a workable line? It looks to me like Rooker-Feldman easily applies to this case. And the question is, what's the workable jurisdictional line you think we should apply that allows consideration of your client's case despite Rooker-Feldman? Four years has passed since the judgment in June of 2018. Nothing, not one thing has been done to correct any of the wrongful allegations that have been alleged. Judge Johnson remains on the case. So allegations of corruption, they may not be easy to make, but you haven't yet been required to come up with any evidence to back them up as far as I So the federal courts are open to anybody who, at least for example under our Bauer opinion, makes broad enough allegations of public corruption, then we have to hear what the state courts are hearing. That's the standard. Right. And Judge, there is one final fact. There is a criminal case that's pending and it has not been adjudicated yet. If there is a favorable finding in favor of the plaintiff in that case, it will prove much of the conspiracy allegations that were alleged. And why would the state courts be an inappropriate forum for correcting that kind of a problem in the heart of their processes? Because nobody's going to look at it. Who brought the indictment? The state's attorney's office. Right. You don't think the court's going to pay Judge Gray Stickler and asked her to get involved, to have, to give me a different judge. And she refuses and says, my options are appellate court, which refused my appeal and the judicial inquiry board, which I think everyone knows has not been a very successful government entity. Thank you very much. Okay. Um, Mr. Griffin. Good morning, Mr. Griffiths. Morning, Your Honor. May it please the court. This is an attorney general, Carson Griffiths on behalf of Judge Johnson. Um, as laid out in a brief, this court can affirm on any of three independent jurisdictional bases, but given Mr. Machitelli's that his claims, um, only allege that Judge Johnson's orders in this case caused his client constitutional injury. I'd like to focus on Rooker Feldman because that's the core of that doctrine. This court has repeatedly held that the doctrine applies when a state court judgment is the source of a plaintiff's alleged constitutional injury in federal court. And that's exactly what Hadzi Tanovich alleged here as Mr. Machitelli recognized. Could I just interrupt for a minute? Because, uh, of course, I understand that the district court may have wanted to take care of all three claims in one pass. And so issued a ruling that used the doctrine that applied to all three defendants. But do you have an opinion as to the wisdom of applying abstention doctrine rather than immunity to a judge's action or, um, yeah, go ahead. Your Honor, I understand the district court's analysis here because jurisdiction is a threshold issue. And so in order to get to the immunity arguments, the district court first addressed jurisdiction. In our view, this case should have been dismissed under Rooker Feldman or the domestic relations exception primarily because those are actual jurisdictional bars, whereas abstention is not discretionary necessarily, but there's some room there for the district court to decide whether the case falls within that, uh, those, those categories of abstention. So for purposes of this court's analysis, I think it's appropriate to begin with Rooker Feldman, address that issue. And only if that doctrine does not apply, then reach the other issues in the case. Although as pointed out in our brief, we do believe that we can reach judicial immunity as a third alternative argument. So turning back to Rooker Feldman, um, the June 13, 2018 order was final and appealable for purposes of that doctrine. Under Illinois Supreme Court Rule 304B-6, a modification of a parental, uh, responsibilities judgment is immediately appealable. It's considered a final judgment. And that's exactly what Hodzie Tanovich did. She appealed that order and she allowed her appeal to be dismissed for want of jurisdiction. The court did not dismiss it for want of jurisdiction. The notice of appeal was filed, but Hodzie Tanovich never filed an opening brief. So it sat on the docket for, um, a significant period of time with no activity and the court dismissed it for want of prosecution. If we agree with you on that, what is your position on Nessus, the corruption exception, how broad it's to be? Following up on the questions from Judge Hamilton. Right. I think that the public corruption exception to the extent it exists is a bit of a problem. I think in that case, the court could follow its decision in Bower, which essentially limited, uh, Laubser to its facts, saying that in that case, we had a conspiracy of something like 40 individuals, court clerks, business owners, basically everybody in this county where the divorce proceeding was, was being held. And because the whole state process was ineffectual under Rooker Feldman, you couldn't rely on the state courts to bring your arguments. That's not what we have here. This is much closer to Bower where we have a challenge again to a specific order entered in the domestic relations proceedings that could have been challenged on appeal and, uh, certain interlocutory rulings preceding that final judgment that also could have been argued on appeal. So is the scope of the, is the metric the scope of the conspiracy? I think the metric is, is twofold. So first it's the scope of the conspiracy and that's shown by Bower. And second, uh, as shown by this court's decision in Golden, um, with respect to Nessus, in Nessus, there was an independent alleged right to a judiciary free of political taint. And in Golden, sorry, go ahead. In Golden, this court distinguished, um, Nessus saying that here we have a case where, uh, plaintiffs are alleging that the injury was caused by a domestic relations child custody order, not some sort of independent right to a political judiciary. So the independence of the claims versus, uh, it becomes an important factor vis-a-vis the conspiracy. It, it does in a sense. So I would, I would also point your honor to Brokaw. So if, if the constitutional injury is completed independent and entirely of the judicial proceedings, that might be something that would avoid record development. So in Brokaw, essentially this gang of conspirators went and took a child from their parents before any state court domestic relations proceedings had begun. And so that injury was complete then at the time the child was taken. Um, the, the right to familial association was severed. Here we have the right to familial association that was allegedly violated by a court order. And that's exactly, it's all part and parcel of the state domestic relations proceedings. I would like to address, uh, counsel's suggestion that these claims can't be brought in state court also. Um, first of all, arguments regarding judicial bias are regularly brought in Illinois appellate courts. Um, also I would note that in her complaint, Ms. Hodzie-Tanovich alleges that the evidence of this supposed corruption is on the face of the post-trial transcripts. If that is so, then she could have raised that argument on appeal. And to the extent there are facts that she wants to bring in outside the record, she could have availed herself and has availed herself of a collateral attack in state court under section 214-01 of the code of civil procedure, which is the analog to this court's or to the, to the federal rules, uh, 60B. And specifically in Maines and Swartz, two cases where this court held that those type of collateral attacks motions to reconsider are avenues by which parties can raise, uh, matters outside the record sufficient to, uh, opportunity to litigate necessary for Rupert Feldman to apply. So, so there's really nothing here, um, about those outside the record facts. I would also note with respect to this new allegation that Ms. Hodzie-Tanovich is a victim of the GAL's misconduct. That's not in the complaint. It's not even in the motion, the response to our motion to dismiss, which is the first time that Mr. Mancitelli raised the guardian idol items misconduct. He didn't seek to amend the complaint. Are you aware of this felony, uh, indictment that, uh, uh, names, uh, uh, Ms. Hodzie-Tanovich as Jane Doe? Are you aware of that? I'm not aware of that. I haven't seen any felony indictment naming her specifically. I'm only aware, and this is not in the record either, but Mr. Mancitelli referenced there's a publicly available ARDC complaint against, uh, Mr. Pasulka and I don't believe that Ms. Hodzie-Tanovich is named in that. So that's, that's as far as I know. So I've been asking questions about whether this public corruption, um, exception as narrow as it might be is worth the candle in essence. Um, if it's not, if there's not a workable line to, um, to apply at the time a case is filed. I have to say, as I wonder about that, I also wonder how I would react if, for example, this case were filed upon the conviction of somebody like the GAL in this case on these kinds of, uh, of charges and what would, what would we expect, um, the state courts to do under circumstances like that? Sure. The state courts could vacate the underlying orders if they were the product of fraud, duress, coercion. It's 60B in essence. In essence, 60B. I don't know the, I don't know the state court rules here. Right. It's 214-01, but it's the same, it's the same as the rule in federal court. Um, so it would be a collateral attack in state court. If, if Ms. Hodzie-Tanovich was coerced by Mr. Pasulka, that's her avenue. Um, as far as, um. Before you came, well, are you aware of any of these other, um, indictments against the GAL? I, I'm not, Your Honor. I'm sorry. I'm not, uh, aware of where those indictments are pending or how many charges have been filed against them. It's really not relevant, uh, to this matter because it's not in the complaint. Um, and even if it were, as I just mentioned to Judge Hamilton, that would just further show that Hodzie-Tanovich might have relief available to her in the state courts. It, it wouldn't affect her reasonable opportunity to litigate for purposes of Rooker Feldman. Um. Yeah, I'm just, I'm just trying to figure out, um, a couple of, you know, things, um, such as why Mr. Machitelli insists there was an appeal when there was not another appeal. Was there that we're, we're only talking about one to the state court, right? Right. Well, so there's been several appeals in the state court because domestic relations proceedings go on for a long period of time and they give rise to various appealable judgments along the way. So as we laid out in our brief, the initial dissolution of marriage judgment that ended the marriage and the initial allocation judgment that split parenting time 50-50, there was an appeal from that and the appellate court has entered a decision on that, um, and it actually vacated a contempt order entered against Ms. Hodzie-Tanovich. So that was one appeal. The appeal that's relevant for purposes of this claim, which centers on the June 13, 2018 order, that was the 304B6 appeal that was dismissed for want of prosecution. I believe, and Mr. Machitelli obviously would, would know better, um, because he's pursuing the case in state court. I believe that there have been subsequent appeals, but I don't think that those are necessary to get into because the complaint really goes up to June 13, 2018. It says that's when the injury occurred and that's, that's it. Then, then we have these allegations about, um, you know, Mr. Pasolka's conduct occurring later, but again, not in the complaint. Only first raise in response to our motion to dismiss. Um, so... Go ahead. Could I ask you, um, what role does a guardian ad litem play after the initial, after the, the, the dissolution decree? So, uh, under the Dissolution of Marriage Act, specifically Section 506, the court can appoint a child representative or a GAL in, and the language I believe says any proceeding in which there are issues over parental responsibilities, custody, anything like that. So the continuing supervision of the... Yes. Of the custody arrangements. Yes, and the court can do that on its own motion. That's expressly in the statute as well. So, um, right. The, the, and again, even if assuming, uh, that Judge Johnson erred in continuing Mr. Pasolka's appointment after the dissolution of marriage, again, that's an argument that should be raised in state court, um, rather than in this court. I, I, I, I would, it, well, I'd like your view on something. What, is it a, is it better from a policy perspective for guardians ad litem to be dismissed because they have, uh, absolute or quasi-judicial immunity or based on jurisdictional arguments regarding abstention? What, what is your view? Uh, again, our view is that, um, jurisdiction should be addressed first because that's a threshold issue. I, I agree that immunity is a preferable for the party's dismissal because it's with prejudice, um, and also judicial immunity, quasi-judicial immunity. These are immunities to protect, uh, individuals like my these don't even really proceed because judges shouldn't have to fear for litigation against them over their judicial acts. So, uh, on the one hand, I understand that jurisdiction is a threshold issue and important to address. Specifically, uh, federal courts should address that first, any court. Um, but also, yes, the, the judicial immunity, it, it's certainly its in this case, um, it had the district court reach both issues. Um, although if it didn't have jurisdiction, it likely should not have reached the judicial immunity question. But again, I think that this court should resolve this on any of the three, um, jurisdictional issues raised in our brief. And unless this court has any questions, we would rest on the remaining arguments in our brief. Thank you very much. Thank you very much. All right. Uh, um, Mr. Meschatelli, um, of course you, you, you may, uh, I'll, I'll give you three minutes because we really asked you a lot of questions. Your honors. Um, this is the key in this particular case of why the federal court must retain jurisdiction of this case. We keep talking about the facts that occurred up until the judgment of June 13th, 2018. And I asked the court to take into consideration judge Johnson's statement in court. I just want to know David Pasolka, who is the GAL is one of the best regarded GALs in the court system. I received his report in that light. In addition, I am happy with the GALs report. I don't need to ask anything further. Lastly, all your info about a conspiracy and everything comes from your client, meaning the plaintiff in this case and no other sources. There were no other sources other than common sense. After the civil rights case was filed in June of 2020, if it had stayed just like that with those facts available, I would agree abstention may be appropriate. However, the facts that came afterwards in 2020 and 2021 really show that there was a conspiracy, that there was an individual with a criminal endeavor. And that was the GAL who unfortunately influenced judge Johnson in ex parte communications in the back room in an improper way. I asked the court to take into consideration the Lubner case where judge Posner states, the reason that plaintiffs in state court can't get relief from the Illinois Supreme Court is because the only facts that are considered is what's in the bar record. It's not subsequent facts. And in this particular case, when you apply abstention, you can look at 12B1, rule 12B1. You can look outside the complaint. You must look at new facts. You must be... So in deciding jurisdiction, you want the district court to try the issue of the corruption in the state courts? Yes, your honor. I want that to be an My phone rings nonstop with people who have the same problems. You've got to help me with this. What about the appeal? There were two appeals that are of importance here. The first appeal was on the divorce and the allocation of the debt and the assets. And that was dismissed because there was no transfer. Subsequent appeal was brought asking the appellate court to consider whether or not Judge Johnson should recuse himself from the case. And we brought rule 366 before the court that gives the court discretion to correct some errors. And the court had stated we have no jurisdiction. So when Chief Judge Grace Dickler advises me to go to the appellate court and I do, and there is no relief, I ask this court to take that into consideration where abstention is not appropriate in this particular case. Thank you. All right. Judge, what we did is we appealed a 214-01 petition in the appellate court stating, look at all the fraud that's happened. You can't make me go through litigation again with Judge Johnson and wait till I get a final ruling before I can appeal whether or not it's appropriate for remain on this case. It is not appropriate. There is evidence that he had ex parte communications with a criminal and he relied on those. Thank you. Those are very serious allegations. Thank you very much. And the case will be taken under advisement.